# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL BARROW and KAYLIE BARROW, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 13-cv-8470 |
| ) | |
| MICHAEL BLOUIN, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Following Michael Barrow's arrest for allegedly looting and trespassing on his mother-in-law's property in the wake of a tornado, Plaintiffs Michael and Kaylie Barrow brought this action against Defendants Michael Blouin, Kathy Hoffmeyer, the Will County Sheriff's Office, and Will County for false arrest, unreasonable seizure, malicious prosecution, defamation, intentional infliction of emotional distress, and reimbursement. Defendants have moved to dismiss [9] Plaintiffs' complaint. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss [9] and dismisses Defendant Hoffmeyer from this lawsuit.

**I.     Background**

On Sunday, November 17, 2013, tornadoes touched down in Will County, Illinois, and destroyed the home of Kaylie Barrow's mother, Jamie Mack. After the tornados and severe weather had passed through the area, Kaylie Barrow and her husband, Michael Barrow, went to Jamie's property to look for Jamie and search for keepsakes. In order to get to Jamie's house, the family members had to drive along Frontage Road. A mobile triage center had been set up at one of the entrances to Frontage Road.

Defendant Blouin of the Will County Sheriff's Office, a few other Will County deputies, and a multi-disciplinary emergency task force were stationed at the center. While the Barrows searched Jamie's property for belongings, Defendant Blouin arrested and handcuffed Michael for trespassing and looting. According to the complaint, Kaylie explained to Blouin that she and Michael were "cleaning up their own property," but Defendant Blouin threatened to put Kaylie in handcuffs "if she did not shut up." Compl. at ¶ 24. The complaint further alleges that other family members confirmed that Kaylie and Michael were part of the family and were there to help with clean-up efforts.

In connection with an attempt to justify the arrest, Plaintiffs allege that Deputy Blouin prepared an arrest report which falsely indicated that he arrested Michael at a commercial establishment located several acres away on the other side of the relative's property. He also spoke with Michael's employer, the Coal City Fire Chief, and told him that Michael was a "criminal" and that he "would be going to prison." *Id.* at ¶ 29. After speaking with Michael's employer, Deputy Blouin then communicated the details of his arrest report to Defendant Kathy Hoffmeyer, who was the police spokesperson for the Will County Sheriff's Office. Hoffmeyer subsequently informed various news outlets that Michael had been arrested for looting. Michael was released on Monday, November 18, 2013. Although Michael had been arrested and detained, Defendants contend that criminal charges were never filed against Michael. However, Michael contends, without specifying how he was charged, that he was presented to a judicial tribunal and the case was dismissed.

On November 22, 2013, Plaintiffs filed a six-count complaint against Defendants, alleging false arrest against Defendant Blouin (Count I), unreasonable seizure against Defendant Blouin (Count II), malicious prosecution against Defendant Blouin (Count III), intentional
2

infliction of emotional distress against Defendants Blouin and Hoffman (Count IV), a "reimbursement claim" against Defendants Will County and Will County Sheriff's Office (Count V), and defamation against Defendants Blouin and Hoffman (Count VI).  Defendants have moved to dismiss Counts II, III, IV, and VI.

## II. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citations omitted).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must satisfy the requirements of Rule 8.  Fed. R. Civ. P. 8.  First, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555, 569 n.14).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic*, 550 U.S. at 579-80.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, quotation marks, and brackets omitted).

**III.    Analysis**

    **A.    Unreasonable Seizure (Count II)**

Defendants contend that Plaintiffs' unreasonable seizure claim should be dismissed as duplicative of Plaintiffs' false arrest claim. Courts have authority to dismiss duplicative claims if they allege the same facts and the same injury. See *F.D.I.C. v. Saphir*, 2011 WL 3876918 at *9 (N.D. Ill. Sept. 1, 2011). Federal Rule of Civil Procedure 8(d)(2) permits alternative pleading, but requires the pleader to use a formulation from which it can be reasonably inferred that the pleader is indeed pleading in the alternative. *Id.* at *9 (citing Rule 8(d)(2), and *Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)). Claims that involve the same operative facts and same injury, and that require proof of essentially the same elements, are duplicative as opposed to alternative. See, *e.g.*, *Beringer v. Standard Parking O'Hare Joint Venture*, 2008 WL 4890501 at *4-5 (N.D. Ill. Nov. 12, 2008).

In the present case, the claims in Counts I and II are based largely on the same operative facts and alleged injury and also seek the same relief. Both claims allege that Deputy Blouin arrested Michael Barrow without probable cause and that Michael was injured as a result of being arrested. Plaintiffs allege that Michael Barrow was arrested and detained for several hours; thus a Fourth Amendment false arrest claim, as opposed to a Fourth Amendment unreasonable seizure claim, is the appropriate claim for Michael Barrow to assert.[1] With respect to Michael Barrow, an unreasonable seizure claim is duplicative and unnecessary.

Count II contains an additional allegation that Deputy Blouin threatened to arrest Kaylie Barrow. Defendants contend that even if the alleged threat of arrest occurred, it would not

---

[1] Plaintiffs contend that a person can be unreasonably seized without being arrested. While that is true, Count II does not allege any unreasonable conduct except for the arrest of Michael Barrow. The facts alleged, if believed, do not give rise to an unreasonable seizure without an arrest; rather, they give rise to a claim of false arrest.

constitute a violation of the Fourth Amendment. To allege a violation of the Fourth Amendment, a plaintiff must allege that a "search" or "seizure" occurred. *Dick v. Gainer*, 1998 WL 214703, at *3 (N.D.Ill. Apr. 23, 1998) (citing *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)). A seizure for purposes of the Fourth Amendment can occur when an officer "by means of physical force or show of authority has in some way restrained the liberty of a citizen." *United States v. Mendenhall,* 446 U.S. 544, 552 (1980) (internal quote omitted); see also *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, * * * in some way restrained the liberty of a citizen.") (internal quotation omitted). A person is "seized" under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall,* 446 U.S. at 554. The Supreme Court further explained the circumstances that might indicate a seizure as follows: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554; see also *Duran v. Sirgedas*, 240 Fed.Appx. 104, 110-111 (7th Cir. 2007). A plaintiff "must not only show that her personal liberty had been restrained, *Florida v. Bostick,* 501 U.S. 429, 435–37 (1991), but that she 'actually yield[ed] to a show of authority * * *." *California v. Hodari D.,* 499 U.S. 621, 629 (1991).

A seizure does not occur unless a reasonable person believes he is not free to leave a particular place. *Dick*, 1998 WL 214703 at *3 (citing *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980)). In *Dick*, the plaintiff based his Fourth Amendment claim on the allegation that he was threatened with arrest. Finding that the plaintiff was never restrained by any officer,

5

the court concluded that no seizure occurred for purposes of the Fourth Amendment because no reasonable person would have felt that his freedom was restricted. *Dick*, at *4. Here, Plaintiff does not allege that she was physically seized. Further, Plaintiff does not allege that her freedom of movement was restrained or that Deputy Blouin made any effort to detain her. Instead, Plaintiffs' allegations acknowledge that Kaylie was never arrested; rather, they allege that Kaylie was threatened with arrest if she did not keep quiet. Plaintiffs have not presented a single case in which an officer's threat of arrest, unaccompanied by anything else, has been found to constitute a seizure. Rather, the authority provided by Defendants indicates that the mere threat of arrest is insufficient to constitute a seizure. See, *e.g., Bach v. Milwaukee Co. Circuit Court*, 2013 WL 4876303, at *10 (E.D. Wisc. Sept. 11, 2013) (granting motion to dismiss unreasonable seizure claim and concluding that officer's threat of arrest does not "transform the encounter into a seizure"); *Thompson v. Village of Monee*, 2013 WL 3337801, at *20 (N.D. Ill. July 1, 2013) ("The Court dismisses with prejudice these allegations regarding mere threatened * * * arrests * * *."). The standard is whether the individual feels free to leave, and Plaintiffs fail to allege that Deputy Blouin prevented Kaylie from moving or leaving. The only seizure alleged in Count II is the arrest of Michael, which rests on exactly the same operative facts that serve as the basis for Count I. As a result, Count II is duplicative of Count I and will be dismissed.

    **B.    Malicious Prosecution (Count III)**

To state a claim for malicious prosecution under Illinois law, the plaintiff must allege that (1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceedings were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury. See *Sneed v. Rybicki,* 146 F.3d 478, 480 (7th Cir. 1998); *Bianchi v. McQueen*, 2014 WL 700628, at *11 (N.D.

Ill. Feb. 24, 2014); see also *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (1996). Simply being arrested does not satisfy the judicial proceedings requirement, as malicious prosecution and false arrest are separate claims. *Sneed*, 146 F.3d at 481. Instead, as defined by Illinois law, a criminal prosecution is commenced by the filing of a complaint, information, or indictment. See 725 ILCS 5/111–1; *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001); *Magnuson v. Cassarella*, 812 F. Supp. 824, 832 (N.D. Ill. 1992) (citing *Mulligan v. Village of Bradley*, 475 N.E.2d 1029, 1032 (Ill. App. Ct. 3rd Dist. 1985)). A plaintiff who is only arrested and detained does not have a claim for malicious prosecution. *Sneed*, 146 F.3d at 481.

Plaintiffs do not affirmatively assert that Michael Barrow was formally charged with a crime through a complaint, information, or indictment. Instead, Plaintiffs urge the Court to reject the "defendants' narrow view" that a criminal prosecution can only be commenced by the filing of a complaint, information, or indictment. However, as the case law and statute cited above indicates, the "narrow view" that Plaintiffs want the Court to reject is the law in Illinois. Thus, to state a claim for malicious prosecution, a plaintiff must allege, in part, the commencement of an original criminal proceeding against him. See *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011).

Instead of alleging that Michael Barrow was charged through a complaint, information, or indictment, Plaintiffs allege that the "case" against him was "dismissed" when he was presented to a judicial tribunal. But the fact that an arrestee is released from custody at the same time he is supposed to appear before a judge does not necessarily mean that criminal proceedings had commenced against the arrestee. Generally, the point of an initial hearing is for the State to announce whether criminal proceedings will ensue. Plaintiffs' own allegations acknowledge that Michael was released from custody upon appearing in court. Thus, the plausible interpretation is

that the State announced that no formal criminal charges had been or were going to be filed. Because Plaintiffs have failed to allege an element of malicious prosecution—that judicial proceedings were commenced by Defendants—the Court dismisses Count III without prejudice. However, if in fact Michael Barrow was charged through a complaint, information, or indictment, the Court gives Plaintiffs 21 days to file an amended complaint—consistent with counsel's obligations under Federal Rule of Civil Procedure 11—to assert such an allegation.

### C. State Law Claims

Defendants contend that the state law claims against Blouin and Hoffmeyer are not actionable under Illinois law because, as government officials, Blouin and Hoffmeyer have absolute immunity for making statements that are reasonably related to their job responsibilities. Under Illinois law, an official from the executive branch of local government is protected from civil liability by an absolute privilege when making statements that are reasonably related to the official's job responsibilities. *Okun v. Illinois State Toll Highway Authority*, 2007 WL 1119269 at *4 (N.D. Ill. Apr. 12, 2007) (citing *Blair v. Walker*, 349 N.E.2d 385, 389 (1976)). Absolute privilege provides complete immunity from civil action, even when the statements at issue are made with malice. *Bushell v. Caterpillar, Inc.,* 683 N.E.2d 1286 (1997). Under Illinois law, the absolute privilege for communications is an affirmative defense. See *Harris v. News–Sun,* 646 N.E.2d 8, 10 (Ill. App. Ct. 1995); *Geick v. Kay,* 603 N.E.2d 121, 127 (Ill. App. Ct. 1992). Federal notice pleading rules do not require the plaintiff to anticipate or overcome affirmative defenses; however, resolution of an affirmative defense is appropriate in a motion to dismiss if "the plaintiff effectively pleads himself out of court by alleging facts that are sufficient to establish the defense ." *Richards v. Kleinhubert,* 263 Fed. Appx. 493, 495 (7th Cir. 2008) (citing *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir. 2006)).

8

The defense of absolute privilege is based on the notion that conduct which would otherwise be actionable is shielded from liability because the defendant is acting in furtherance of an interest of social importance, which is entitled to protection even at the expense of uncompensated harm to a plaintiff's reputation. *Geick*, 603 N.E.2d at 127. Because it provides complete immunity, the defense of absolute privilege is necessarily narrow and generally limited to situations which involve legislative, judicial, and quasi-judicial proceedings. *Barakat v. Matz*, 648 N.E.2d 1033 (1995); see also *Belluomini v. Zaryczny*, 2014 WL 641933, at *6 (Ill. App. 1st Dist. 2014). The privilege applies to both high-ranking, elected officials such as governors, as well as lower level officials such as police officers, as long as the person is speaking about issues within the scope of his or her duties. See *Okun*, 2007 WL 119269 at *4 (collecting cases). The Supreme Court explained in *Barr v. Matteo* that "[i]t is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted." 360 U.S. 564, 572–74 (1959). As a result, to determine whether a particular communication is privileged, the Court must determine "whether the statements made were reasonably related to [the official's] duties." *Geick,* 603 N.E.2d at 127–28. In doing so, courts examine the factual nature of the official's duties in relation to the communication.

1. *Defendant Hoffmeyer*

Plaintiffs' intentional infliction of emotional distress (Count IV) and defamation (Count VI) claims against Hoffmeyer are based on the allegation that she communicated Michael Barrow's arrest, as set forth in Deputy Blouin's report, to the news media. This is exactly the type of situation that the absolute privilege was intended to bar. For instance, in *Harris v. News-Sun*, the plaintiff brought a defamation claim against a detective for making allegedly false statements to a newspaper reporter regarding crimes that the plaintiff had allegedly committed,

including that pornographic materials were discovered during a search of the plaintiff's home. 646 N.E.2d 8, 11 (Ill. App. Ct. 2nd Dist. 1995). The court concluded that the absolute privilege extended to a police officer's statements to the press because the record before the court indicated that he was an official police spokesperson, which required him to speak to the media regarding ongoing investigations. 646 N.E.2d at 11–12.

Here, the nature of Hoffmeyer's duties with respect to the alleged defamatory statements appears on the face of the complaint. According to the complaint, Hoffmeyer made the allegedly tortious statement as part of her job duties as "Sheriff's police spokesperson." Compl. at § 8. The complaint clearly alleges that Hoffmeyer was the police spokesperson for the Sheriff's Office and communicated information about a police activity—the arrest of Michael—to the press. These allegations are the only ones asserted against Hoffmeyer in support of Plaintiffs' claims of defamation and IIED. Because these allegations against Hoffmeyer establish that she is absolutely immune under Illinois law, neither of the state law claims against her is cognizable. See *Okun*, 2007 WL 1119269, at *4 (dismissing the plaintiff's defamation claim against the spokesperson for the Toll Highway Authority and finding that the plaintiff's own allegations acknowledged the defendant was the "designated spokesperson" for the tollway when she made the allegedly defamatory statement). Hoffmeyer is entitled to absolute immunity for her actions and she is dismissed from this action.

### 2. *Defendant Blouin*

Plaintiff alleges that Deputy Blouin, "in the scope of [his] employment" at the Will County Sheriff's Office, memorialized a "made up" scenario in his official arrest report, told the Coal City Fire Chief that Michael Barrow was "a criminal" and "would be going to prison," and then communicated the "made up" scenario to Defendant Hoffmeyer, the official spokesperson

of the Sheriff's Office. As with Hoffmeyer, Defendants contend that Deputy Blouin is entitled to absolute immunity for these communications, regardless of whether they were false or made with malice.

As a police officer, Blouin's duties included investigating whether a crime had been committed. This certainly included generating a police report with details of the arrest and communicating the daily arrest report to his office's spokesperson. What remains to be seen is whether these duties included divulging information—such as he's "a criminal" who "would be going to prison"—to an arrestee's employer. As previously indicated, communications made in the course of an officer's official duties are privileged, regardless of whether they were false or made with malice. But communications that fall outside of official duties are not privileged. At this stage, the Court cannot discern whether speaking with Plaintiff's employer was part of Defendant Blouin's duties. The Court denies Defendants' motion to dismiss Counts IV and VI against Defendant Blouin.

## IV. Conclusion

For these reasons, the Court grants in part and denies in part Defendants' motion to dismiss [9]. The Court dismisses Counts II and III and also dismisses Defendant Hoffmeyer from this lawsuit. Counts I, IV, and VI remain pending against Defendant Blouin, and Count V remains pending against Defendants Will County and Will County Sheriff's Office. In the event that Plaintiffs believe that they can cure the deficiencies in Count III—consistent with counsel's obligations under Rule 11—the Court gives Plaintiffs 21 days to file an amended complaint.

Dated: May 7, 2014 _____
Robert M. Dow, Jr.
United States District Judge

11